Joseph LaMANTIA, Plaintiff-Respondent,

v.

Marcella BOBMEYER, Defendant-Appellant, and

Leona Ciluffo, Defendant-Respondent.

No. 31556.

St. Louis Court of Appeals.

Missouri.

Sept. 25, 1964.

R. E. Keaney, St. Louis, for defendant-respondent.

Derrick & Holderle, Tyree C. Derrick, St. Louis, for defendant-appellant.

Padberg & Raack, Godfrey P. Padberg, Glennon T. Moran, St. Louis, for plaintiff-respondent.

ANDERSON, Judge.

This is an action by Joseph LaMantia against Marcella Bobmeyer and Leona Ciluffo. The object of the suit was to recover for loss of consortium, companionship and services of plaintiff's wife, Lucille LaMantia, and for medical expense incurred on her behalf, as a result of injuries sustained by her in an automobile collision between the automobiles owned and operated by defendants. There was a verdict in plaintiff's favor in the sum of $8,000 against defendant Bobmeyer, and in favor of defendant Ciluffo. From the judgment on this verdict defendant Bobmeyer has appealed.

The accident occurred on May 17, 1959. On that date Lucille LaMantia and Leona Ciluffo went to a family gathering. After the party was over, Mrs. Ciluffo was taking Mrs. LaMantia home when her automobile was involved in a collision with one driven by defendant Marcella Bobmeyer. Both automobiles were proceeding eastwardly on Gravois Road. The collision occurred just east of the intersection of Gravois Road and Itaska Streets at about 8:00 p. m. It had been raining but the rain had stopped before the collision occurred. Mrs. Ciluffo was driving her car in the lane next to the parking lane, and defendant Bobmeyer was following her in the same lane. In front of Mrs. Ciluffo, and in the same traffic lane was a car driven by a Mr. Gast. There was eastbound traffic in the traffic lane to Mrs. Ciluffo's left. After crossing Itaska street, Mr. Gast stopped his car, and Mrs. Ciluffo put on her brakes and stopped about five car lengths east of the intersection of Gravois and Itaska. Mrs. LaMantia testified that there was nothing unusual about the stop that Mrs. Ciluffo made. Thereafter the Ciluffo car was struck in the rear by the automobile being driven by defendant Bobmeyer. The force of the collision drove the Ciluffo car forward and it collided with the one being driven by Mr. Gast. Mrs. LaMantia was thrown backward and forward by the two impacts and was injured for which she received medical treatment.

Defendant Ciluffo testified that the streets were dry; that the traffic was heavy; that she was following the Gast car at a distance of approximately one car length, at a speed of fifteen to twenty miles per hour. She further testified that the Gast car came to a normal, slow and gradual stop, and that she came to a gradual stop behind the Gast car. She stated she was stopped one or two seconds when she was struck from behind by the Bobmeyer car.

Defendant Bobmeyer testified she was operating her automobile one car length behind the Ciluffo automobile; that all of the vehicles were going at approximately the same speed; that Mrs. Ciluffo gave no hand signal of her intention to stop, and that Mrs. Ciluffo made a sudden stop.

Defendant Bobmeyer further testified that the pavement was wet of which fact

she was aware. She further testified that she thought she could have stopped her car before colliding with the Ciluffo car if the street had not been wet. She also stated that when she saw the car in front of her stop, she applied her brakes, cut her wheels to the left and moved partly into the next lane. She further stated that the right front fender of her car struck the left rear fender of Mrs. Ciluffo's automobile.

As to defendant Bobmeyer the case was submitted to the jury on the so-called "rear end" doctrine, and against defendant Ciluffo on the charge of negligence that she brought her automobile to a sudden and abrupt stop and failed and omitted to give a timely and adequate warning to vehicles following her of her intention to stop. Three forms of verdict were submitted to the jury, to wit; (1) a verdict form permitting a finding in favor of plaintiff against defendant Bobmeyer and in favor of defendant Ciluffo, (2) a verdict form permitting a finding for plaintiff against defendant Ciluffo and in favor of defendant Bobmeyer and, (3) a verdict form permitting a finding against plaintiff and in favor of both defendants. There was no verdict form permitting a finding for plaintiff against both defendants. As heretofore stated the jury found for plaintiff for $8,000 against defendant Bobmeyer and in favor of defendant Ciluffo.

Appellant contends that the court erred in failing to submit to the jury a verdict form authorizing a verdict against both defendants. In support of this contention it is urged that since the petition charged concurrent negligence, and separate verdict directing instructions authorized recovery against each defendant for their concurrent negligence, the failure to submit a form of verdict authorizing a joint finding against both defendants was tantamount to a direction that the jury could not find against both, but could only find against one defendant; that in such a situation the jury, although it might believe that both parties were guilty of negligence which contributed

to cause the accident, might have arrived at its verdict by comparing the negligence of each defendant to ascertain the one more culpable, this putting into effect the doctrine of comparative negligence which doctrine is not recognized in this state, and as a result appellant was deprived of her right of contribution from her codefendant.

It appears from the record that appellant's counsel made no objection at the trial to the forms of verdict submitted, nor did he object to the failure of the court to submit the form of verdict which he now says should have been given. It also appears that there was no such objection by him to the reception of the verdict when it was returned into court by the jury. Under these circumstances appellant is in no position to complain of the matter in this court. Pleiman v. Belew, 360 Mo. 219, 227 S.W.2d 733; Kansas City v. Thomson, Mo., 208 S.W.2d 216; Baker v. Atkins, Mo.App., 258 S.W.2d 16.

Nor does the point call for review under Supreme Court rule 79.04, V.A.M.R., since it is not claimed that the court's action in any way affected appellant's liability to plaintiff, or place an undue burden on her not required by law. Plaintiff is not complaining of the court's action, and should not be compelled to retry her case to afford appellant the opportunity to establish a right of contribution from defendant Ciluffo if a judgment against her should on retrial be obtained.

Appellant's next point is that the court erred in giving and reading to the jury instructions numbered 1 and 2. These were verdict directing instructions given at plaintiff's request. Instruction No. 1 submitted the case as to defendant Bobmeyer, and Instruction No. 2 submitted the case as to defendant Ciluffo. Both required a finding of negligent conduct on the part of the particular defendant, which negligence caused or contributed to cause the collision; also a finding of injury to plaintiff's wife and damage to plaintiff. At the trial ap-

pellant voiced no objection to Instruction No. 2, either general or specific. Therefore the alleged error in said Instruction is not before this court.

The complaint against Instruction No. 1 is that it did not authorize a joint verdict against both defendants, which alleged infirmity was prejudicial in that it deprived appellant of her right to seek contribution from defendant Ciluffo. There is no merit to this contention. The fact of defendant Ciluffo's negligence, if she was negligent, was no defense to plaintiff's action against appellant. If appellant was negligent as hypothesized in the Instruction, and such negligence either caused or contributed to cause the collision which resulted in injury to plaintiff's wife, and damage to plaintiff, then appellant may be held liable, notwithstanding there may have been other concurrent causes, so long as the other concurrent causes were not under the control of plaintiff or the result of his own negligent conduct. Greer v. St. Louis Public Service Co., Mo.App., 87 S.W.2d 240. Here there was no issue of contributory negligence on the part of the plaintiff.

Appellant also complains of the court's refusal to give and read to the jury Instruction B which was offered on behalf of defendant Bobmeyer. Said proposed instruction reads as follows:

"The Court instructs you that if you find for the plaintiff, Joseph LaMantia, under Instruction No. 1 and against defendant, Marcella Bobmeyer, and if you believe and find from the evidence that the defendant, Leona Ciluffo, was also negligent in some degree, if any, and said negligence, if any, entered into and formed a part of the direct producing cause of the collision in question and damages to the plaintiff and without that negligence, if any, on the part of the defendant, Leona Ciluffo, the collision and damages would not have occurred, then your verdict must be against the defendant, Leona Ciluffo,

as well as against defendant, Marcella Bobmeyer."

The instruction was properly refused. It required the jury to render a verdict against defendant Ciluffo if they found that said defendant was also negligent in some degree, without restricting their finding to the negligence charged in the petition and submitted in Instruction Number 2. Defendant Ciluffo was only required to meet the charge of negligence alleged in the petition, but under this instruction her burden would have been enlarged to meet any theory that the jury might conceive to be negligent conduct though not pleaded or submitted by plaintiff in his verdict directing instruction. Defendant Bobmeyer should not be permitted to do this by having the court give to the jury a roving commission to search the evidence and by the use of their imagination find what they conceive to be negligent conduct though not relied upon by plaintiff as a basis of recovery. Pulse v. Jones, Mo., 218 S.W.2d 553.

Furthermore proposed Instruction B could in no way affect the issue of appellant's liability to plaintiff. It was not error to refuse this instruction.

It is next urged that the court erred in refusing to give and read to the jury Instruction A which purports to be a converse instruction. Said instruction is as follows:

"The Court instructs you that if you believe and find that at the time and place mentioned in evidence the defendant, Marcella Bobmeyer, was operating her automobile with the highest degree of care and was not negligent as charged against her in Instruction No. 1, then your verdict will be in favor of defendant, Marcella Bobmeyer, and against the plaintiff, Joseph LaMantia."

Although the foregoing instruction does not hypothesize any facts it would not have been improper for the Court to have given it. Terrell v. Missouri-Kansas-Texas R. R. Co., Mo., 327 S.W.2d 230. But was it

error to refuse it? We think not, for the reason that the same charge was contained in Instruction No. 4, which was a burden of proof instruction. The last sentence of Instruction No. 4 states, "And in this connection, if you find that defendant, Marcella Bobmeyer, was not negligent in any respect charged against her in other instructions given you herewith, then the plaintiff, Joseph LaMantia, has failed to bear the burden of proof against defendant, Marcella Bobmeyer, and your verdict will be against the plaintiff, Joseph LaMantia, and in favor of the defendant, Marcella Bobmeyer."

 Appellant's next complaint is that the court erred in admitting in evidence certain records of Dr. E. H. Parsons with reference to an examination of plaintiff's wife which he made at the request of Dr. Pranger, who was Mrs. LaMantia's treating physician. In support of this assignment it is urged that the records were not made in the regular course of business, and were not such as contemplated by the statute; that said records contained conclusions, opinions and hearsay evidence not within the purview of the statute, and were not made for the purpose of diagnosis and treatment but for the information of plaintiff's counsel for use in connection with the lawsuits he was handling for plaintiff and his wife.

To lay a foundation for the introduction of this record plaintiff called as a witness Mildred White. She testified that she had been employed by Dr. Parsons as a secretary for a period of twelve years, and had brought into court Dr. Parsons' records with reference to his examination of Mrs. LaMantia which was made on March 3, 1960. She further testified that Dr. Parsons had since died and that the records had been kept under her care and custody since the doctor's death. The records, according to her testimony were made at the time Dr. Parsons made the examination, and were afterwards kept in the regular course of business under her custody; that she was present during the examination, that plaintiff's Exhibit 2 contained the notes of the

examination of Lucille LaMantia on March 3, 1960; that Dr. Parsons' usual practice was to make longhand notes of the information the patient gave him at the time of the examination with his own findings, and then dictate these into a stenorette tape recorder. His secretary would then transcribe this recording, which transcribed recording was made a part of his record. Miss White testified she would read the transcribed report and listen to the tape recording to check the accuracy of the report. These reports were made the day of the examination of the patient or the next day. Miss White further testified that Dr. Pranger referred Mrs. LaMantia to Dr. Parsons for an examination for the purpose of consultation. Dr. Parsons was a specialist in neurology and psychiatry. Mrs. LaMantia was thought to have a ruptured cervical disc with nerve involvement. Dr. Pranger testified he sent her to Dr. Parsons because he wanted the latter's opinion on her condition. The examination was not made for the purpose of treatment but for Dr. Pranger's benefit. There was no evidence in the record that the examination was made at the request of plaintiff's counsel for use in the trial of this case, although a copy of the consultation notes, together with a copy of a letter which Dr. Parsons wrote to Dr. Pranger was sent to Glennon Moran, an attorney. Mr. Moran does not appear as attorney for plaintiff in this court, or at the trial of this case, but did represent Mrs. LaMantia at the trial of her case.

Dr. Parsons' records were marked as plaintiff's Exhibit 2 and offered in evidence. The Court did not rule on the offer after appellant's counsel made the following observation concerning the records.

"Mr. Derrick: I see nothing in this record that shows the notes that were taken of an examination of this patient that would be admissible under the Business Records as Evidence Rule. The only thing I see here is a report made to someone of this examination of Mrs. LaMantia for the purpose of trial, not for the purpose of treatment

and that would be inadmissible. This is the only thing here that I see that might have been made by the doctor."

The whole of plaintiff's Exhibit 2 was never received in evidence. Parts thereof, plaintiff's Exhibit 2D and 2C, were offered and read into evidence. Exhibit 2D was the record of the physical finding made by Dr. Parsons during the examination of Mrs. LaMantia. Clearly Exhibit 2D was properly received in evidence. A physician's office records with reference to his business as a physician are admissible under the Uniform Business Records as Evidence Law. §§ 490.660, 490.690, R.S.Mo. 1959, V.A.M.S., Fisher v. Gunn, Mo., 270 S.W.2d 869, 877.

Section 490.670 provides that "[t]he term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not." Making examinations for the purpose of consultation with other physicians is a part of a medical doctor's business. Section 490.680 provides that "[a] record of an act, condition or event, shall, insofar as relevant, be competent evidence if the custodian of other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The findings made by Dr. Parsons from observation and examination of Mrs. La-Mantia come under the classification of acts, conditions or events. They were made in the pursuit of his calling and recorded by him at or near the time when made. The testimony of Miss White shows that the manner of their recording and preservation was sufficient to satisfy the requirement of the law so as to render them admissible in evidence. Fisher v. Gunn, supra; Rossomanno v. Laclede Cab Co., Mo., 328 S.W.2d 677; State v. Payne, Mo., 342 S.W.2d 950. The objection that the records were made solely for the information and use by counsel for

Mrs. LaMantia is not supported by the evidence. The objection that the Exhibit was inadmissible for about every reason to be found in the law books is a bit too general to preserve any point for review. The Court should not be required to search through all the law books for a reason to exclude this evidence. The contention that Exhibit 2D was inadmissible because it contained conclusion, opinions and hearsay evidence is without merit. Suffice it to say that we have carefully examined plaintiff's Exhibit 2D and find it not subject to this complaint. Furthermore no such objection to the introduction of Exhibit 2D was made at the trial. The objection that said exhibit contained hearsay evidence is of course without merit. The statute makes the evidence admissible notwithstanding the fact that it contains hearsay. Allen v. St. Public Service Co., 365 Mo. 677, 285 S.W.2d 663, 55 A.L.R.2d 1022.

Error is assigned in the admission, over appellant's objection of plaintiff's Exhibit 2C. Only part of the exhibit was read to the jury. The part read is as follows:

"In the final paragraph of my Consultation Notes entitled Comment, you will find, I think, the gist of my thinking in her case. I certainly agree with the program of therapy on which you have had her. I would raise the question of whether she might merit cervical myelography at this time. This I think can be answered better by you, who have had the patient under observation, care and treatment, than by anyone else. I am in the spot that I am unable to say that she cannot have a herniated nucleus polposis, although I also will agree that her progress had been satisfactory on a conservative program of therapy. I have a hunch she will have further difficulty from time to time and feel she merits watching as you are doing now."

Miss White testified that plaintiff's Exhibit 2C was a copy of the letter sent to Dr. Pranger, with a carbon copy to Mr. Moran;

that the letter was dictated by Dr. Parsons at the time the consultation notes (records) were dictated; that the original letter was sent to Dr. Pranger as the referring doctor, in the normal course of Dr. Parsons' business; that the exhibit was made a part of Dr. Parsons' file, and had been kept in the normal course of business under her supervision.

The appellant objected to the introduction of this exhibit into evidence on the same grounds that plaintiff interposed to the admission Exhibit 2D. There was a further objection that it was not admissible because it contained conclusions and conjectures on the part of Dr. Parsons.

The proper qualification of a record does not, ipso facto, make all parts of the record automatically admissible. Objectionable parts may be excluded on proper objections. Allen v. St. Louis Public Service Co., 365 Mo. 677, 285 S.W.2d 663. As to hospital records, any record of a diagnosis contained therein is admissible under the Uniform Business as Records Law. Allen v. St. Louis Public Service Co., supra. Such diagnosis is nothing more than a medical opinion based upon observation and the facts developed during an examination of the patient. The same rule should apply in the case of an examination of a person by a doctor for the purpose of consultation with another physician. But a notation in the record based upon speculation and conjecture should not be accepted as a proper diagnosis. In the case at bar, Dr. Parsons, in his report to Dr. Pranger did not give a medical opinion based upon a reasonable medical certainty, but upon a "hunch". Dr. Parsons would not have been entitled to testify that he had a "hunch" that Mrs. La-Mantia would have further difficulty from time to time. Therefore, assuming without deciding that Exhibit 2C was a part of Dr. Parsons' records kept and identified in accordance with Section 490.680, supra, the part thereof, based upon speculation and conjecture was not admissible, and should have been excluded.

However, it is our opinion that its admission in evidence does not warrant a reversal of the case, for the reason that in our judgment its admission could not have materially affected the result of the trial.

Dr. Pranger testified that Mrs. LaMantia suffered a herniated disc, with pain and disability resulting therefrom, and that the condition was permanent. Dr. Parsons' report did not support this conclusion. In fact he was unable to say whether or not she did suffer from a herniated disc, and did not give an opinion based upon a reasonable degree of medical certainty that she would have further difficulty from time to time. It would therefore seem that his report contained evidence that defendant's counsel might use to his benefit in arguing the case to the jury. In our judgment the evidence could not have enhanced the verdict or influenced the result of the trial.

We find no reversible error in the record. The judgment is therefore affirmed.

RUDDY, P. J., and WOLFE, J., concur.